IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| JERRY ROBERSON, | ) |
| Plaintiff, | ) |
| vs. | ) 6:18-cv-00042-LSC |
| SHERIFF GERALD "HOBBY" WALKER, et al., | ) |
| Defendants. | ) |

**MEMORANDUM OF OPINION**

Before this Court are the Motions to Dismiss of Defendants Gerald Walker ("Walker"), Sandor Csitar ("Csitar"), and Tommy Moore ("Moore")[1]; and of Defendant Adam Whitehead ("Whitehead"). (*See* Docs. 6 & 9-1.) Plaintiff alleges violations of 42 U.S.C. § 1983 and malicious prosecution against the Defendants for their roles in his arrest and detention in the Winston County jail in early January 2016. The Defendants' Motions to Dismiss have been fully briefed and are ripe for decision. For the following reasons, Defendants Walker, Csitar, and Moore's Motion to Dismiss (doc. 6) is due to be GRANTED in PART and DENIED in

---

[1] Plaintiff states that he included Defendant Moore as "a necessary party to this litigation, as he is the current Sheriff of Winston County." (Doc. 1 ¶ 6.) However, Plaintiff includes no allegations of operative fact against Defendant Moore. Plaintiff's claims against Moore are thus due to be dismissed.

PART; Defendant Whitehead's Motion to Dismiss (doc. 9-1) is due to be DENIED.

## I. INTRODUCTION[2]

Plaintiff is an attorney who practiced in Birmingham, Alabama for over thirty years before returning to his hometown of Haleyville, Alabama in 2013. Part of Plaintiff's practice in Haleyville involved filing federal lawsuits against Defendant Walker and other law enforcement officials for alleged constitutional violations. On January 8, 2016, Plaintiff traveled to Double Springs, Alabama to conduct personal errands and to meet with a work-release inmate at the Winston County jail. The inmate had requested that Plaintiff meet with him to discuss obtaining his release on bond. Plaintiff completed his errands and then entered the jail to meet with the inmate.

Upon entering the booking area of the jail, Plaintiff spoke with Defendant Csitar, the jail administrator. Plaintiff could not recall the name of the inmate, as he had never spoken with him personally and only had some "telephone message slips." Plaintiff asked Csitar if he could look at the list of current work-release inmates to help him remember the client he was to meet with; Csitar refused to

---

[2] In evaluating a motion to dismiss, this Court "accept[s] the allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff." *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012).

allow Plaintiff to do so. Plaintiff argued with Csitar, and then demanded to see the then-sheriff, Defendant Walker. Because Defendant Walker was not in the jail at the time, Plaintiff waited in the booking area for him to arrive. Csitar then told Plaintiff that if he did not leave the jail he would be arrested, so Plaintiff left.

Plaintiff later encountered Defendant Walker in the parking lot behind the sheriff's office. Defendant Walker likewise refused to allow Plaintiff to visit the inmates. Plaintiff argued that such a refusal was a violation of the inmate's Sixth Amendment rights and threatened to sue Defendant Walker. Both sides continued their "loud discussion" with "profanities . . . exchanged by both parties." (Doc. 1 ¶ 10.) A number of law enforcement and corrections officers gathered in the parking lot to witness the argument. At some point, an officer asked if Plaintiff would take a test to determine if he was on drugs or intoxicated. Plaintiff asked if he was under arrest; the officer informed Plaintiff he was not. Plaintiff then left the area.

Plaintiff was subsequently pulled over by Double Springs police officers and sheriff's deputies "miles away" from Double Springs, arrested, and taken back to the Winston County jail. Plaintiff was searched at the prison, but no contraband was found. After approximately seventy-two hours, Plaintiff was told by officials that he was being charged with possession of marijuana, promoting prison

contraband, escape, obstructing governmental operations, and two counts of disorderly conduct. These charges were based on Defendant Csitar's discovery of marijuana in the jail near the area where Plaintiff was searched.

On January 9, 2016, while Defendant Whitehead, a jail nurse, was examining Plaintiff. Whitehead brought up Plaintiff's involvement in a suit against law enforcement officers on behalf of an inmate who had died in the Winston County jail. Whitehead allegedly was upset with Plaintiff for this lawsuit and told him that he needed to "respect the badge." (Doc. 1 ¶ 17.) Plaintiff told him that "he did not know how he could 'respect the badge,' given how the jail staff had mistreated and neglected [the inmate] to the point that it caused his death." (*Id.*)

Whitehead allegedly became upset with Plaintiff for this statement. Whitehead who is much larger than Plaintiff picked up Plaintiff and carried him to his cell where Whitehead threw Plaintiff to the ground. Plaintiff landed on the metal grate, and sustained numerous injuries including a broken rib. Plaintiff subsequently demanded medical treatment; although he was allowed to see a nurse, he never received pain medication or an X-ray. Plaintiff alleged that Defendant Whitehead "initiated another criminal charge [of harassment] against [Plaintiff]" on January 10, 2016 for the statements Plaintiff made to Defendant Whitehead in an effort to justify the injuries Plaintiff received. (*Id.* ¶ 21.)

Plaintiff remained in the jail until January 15, 2016, when he was involuntarily committed to the Walker Baptist Hospital Behavioral Medicine Unit. Although Plaintiff does not state when he was released from the Winston County jail, he does allege that the amount of bail set for his seven criminal offenses was $60,000. Plaintiff alleges that Defendants "set" his bail above the statutory maximum allowed for the offenses he was charged with and that Defendants set such bail as "cash only" in order to increase the difficulty for Plaintiff to make bail. (*Id.* ¶ 22.) After Plaintiff's criminal charges were set for a hearing, the district attorney dismissed all charges against him with prejudice.

## II. STANDARD OF REVIEW

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, in order to withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must "plead enough facts to state a claim to relief that is plausible on its face." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347–48 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Stated

another way, the factual allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). A complaint that "succeeds in identifying facts that are suggestive enough to render [the necessary elements of a claim] plausible" will survive a motion to dismiss. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.* If the pleading "contain[s] enough information regarding the material elements of a cause of action to support recovery under some 'viable legal theory,'" it satisfies the notice pleading standard. *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011) (quoting *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683–84 (11th Cir. 2001)).

### III. DISCUSSION

## A. Section 1983 Claims against Defendants Walker and Csitar

Defendants Walker and Csitar argue that Plaintiff's § 1983 claims[3] are barred by the applicable statute of limitations. "All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." *Crowe v. Donald*, 528 F.3d 1290, 1292 (11th Cir. 2008) (quoting *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008)). In Alabama, where Plaintiff brought this action, that limitations period is two years. *See Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483 (11th Cir. 1989). "Section 1983 actions do not accrue until the plaintiff knows or has reason to know that he has been injured." *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987) (citations omitted).

Plaintiff states in his Complaint that the alleged conduct underlying his First Amendment Retaliation claim occurred on January 8, 2016, when he was arrested following a dispute with Defendants Csitar and Walker inside or near the Winston County jail. (*See* Doc. 1 ¶¶ 7, 9, 16.) Because Plaintiff filed this action on January 9, 2018, he has facially exceeded the two-year statute of limitations for this claim. Also, Plaintiff has not responded to Defendants' statute-of-limitations defense to

---

[3] Plaintiff appears to assert these Defendants' actions resulted in violations of the First Amendment's guarantee of free speech, Eighth Amendment's prohibition of excessive bail, and the Fourteenth Amendment's guarantee of equal protection and due process. (*See* Doc. 1 ¶¶ 26-28, 31.)

explain how his § 1983 claims relating to his arrest are not time-barred. Plaintiff's First Amendment Retaliation claim is due to be dismissed.

It does not, however, appear from the facts alleged in the Complaint that Plaintiff's Eighth Amendment Excessive Bail claim may be dismissed for failure to file within the statute of limitations. Plaintiff states that he was first made aware of the offenses when he was charged "approximately 72 hours" after his arrest. (*Id.* ¶ 12.) Plaintiff was arrested on January 8, 2016; thus at the earliest Plaintiff was informed of his charges on January 11, 2016. Although Plaintiff does not specifically state when he was informed of the bail amounts, he obviously would not be able to know that such bail was excessive until he was informed of the charges. A § 1983 action does not accrue "until the plaintiff knows or has reason to know that he has been injured," *Mullinax*, 817 F.2d at 716, and Plaintiff did not know of his charges until January 11, 2016. As Plaintiff filed his Complaint on January 9, 2018, his Eighth Amendment Excessive Bail claim is not time barred.

### B. Section 1983 Claim against Defendant Whitehead

Defendant Whitehead argues in regards to Plaintiff's § 1983 claims that he is not a state actor and cannot be subject to a suit under 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). To be "acting under state law," the defendant must have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). The Eleventh Circuit has set forth three primary tests the Supreme Court has used to determine whether state action exists:

> (1) the public function test; (2) the state compulsion test; and (3) the nexus/joint action test. The public function test limits state action to instances where private actors are performing functions traditionally the exclusive prerogative of the state. The state compulsion test limits state action to instances where the government has coerced or at least significantly encouraged the action alleged to violate the Constitution. The nexus/joint action test applies where "the state has so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise."

*Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1277 (11th Cir. 2003) (quoting *Willis v. Univ. Health Servs., Inc.*, 993 F.2d 837, 840 (11th Cir. 1993)).

Supreme Court and Eleventh Circuit precedent is clear medical professionals act under color of state law for purposes of § 1983 when employed by a state to provide medical services to jail or prison inmates. *See West*, 487 U.S. at 55 ("It is only those physicians authorized by the State to whom the inmate may turn.

Under state law, the only medical care [the plaintiff] could receive for his injury was that provided by the State."); *see also Dolihite v. Maughon*, 74 F.3d 1027, 1044 (11th Cir. 1996) (finding that psychiatrists under a contract with the state were state actors subject to liability under Section 1983 when they provided psychiatric services at a state adolescent hospital). *Ancata v. Prison Health Services, Inc.*, is directly applicable to the facts of this case. 769 F.2d 700 (11th Cir. 1985). In *Ancata*, the personal representative of a former inmate's estate brought suit against, *inter alia*, the private entity and its employees who were hired to provide medical services to inmates. *Id.* at 701. According to the allegations in the complaint, the deceased inmate was imprisoned in the county jail, where he began to complain of serious medical issues such as lower back pain, tingling and numbness of his hands, hyperventilation, and double vision. *Id.* at 702. The inmate eventually died from what was alleged to be complications from leukemia.

Based on the defendants' alleged failure to give medical care to the inmate, the plaintiff brought claims under § 1983 for deliberate indifference to a serious medical need. *Ancata* held that both the company that contracted with a county to provide healthcare to jail inmates, and the employees of that company, can be state actors for the purposes of § 1983:

> The [healthcare company and its employees] do not contest, and there can be no serious dispute, that if their actions resulted in a deprivation

> of [the inmate's] constitutional rights, they would be subject to liability pursuant to 42 U.S.C. § 1983. Although [the healthcare company] and its employees are not strictly speaking public employees, state action is clearly present. Where a function which is traditionally the exclusive prerogative of the state (or here, county) is performed by a private entity, state action is present.

*Id.* at 703. Defendant Whitehead can thus be considered a state actor for the actions he took providing healthcare services to Plaintiff on behalf of Winston County.

Defendant Whitehead attempts to circumvent this precedent by arguing that he had no "connection" to the government; his only business relationship was to his employer, Correctional Managed Care Consultants, LLC ("CMCC"). Whitehead asserts that "[t]he mere fact that there was a business relationship between [his] employer and Winston County—and that Winston County is involved—is insufficient to establish Whitehead was a state actor." (Doc. 9-1 at 6.) As the Court understands it, Whitehead argues that his lack of direct privity with a state actor means that he cannot be a state actor for purposes of § 1983.

Defendant Whitehead's lack-of-privity argument has no basis in the precedent of the Eleventh Circuit. Instead, this Court should ask whether Whitehead was performing a function "traditionally the exclusive prerogative of the state." *Focus on the Family*, 344 F.3d at 1277. Sheriffs of the counties of Alabama have traditionally been tasked with not only maintaining the jails of their counties, but also providing for the subsistence of the inmates housed in those jails.

Such a duty includes the provision of medical services. Ala. Code § 14-6-19 provides that, "Necessary clothing and bedding must be furnished by the sheriff or jailer, at the expense of the county, to those prisoners who are unable to provide them for themselves, and also necessary medicines and medical attention to those who are sick or injured, when they are unable to provide them for themselves." Defendant Whitehead worked as a registered nurse in the Winston County jail, treating inmates on behalf of the jail.

Plaintiff's claims against Defendant Whitehead arose from him "violently thr[owing] [Plaintiff to] the floor of his cell", (doc. 1 ¶ 18); such an activity would not constitute the provision of medical services and is closer to inmate supervision and control traditionally performed by a correctional officer. In either case, Defendant Whitehead's activities are functions that are "traditionally the exclusive prerogative of the state." *Focus on the Family*, 344 F.3d at 1277.

Defendant Whitehead also misreads Plaintiff's Complaint as asserting claims of respondeat superior liability under § 1983 for his relationship to CMCC. (Doc. 9-1 at 6.) The Court does not understand this argument, as Plaintiff's Complaint makes clear he seeks recovery for Whitehead's personal actions. Thus, Defendant Whitehead's Motion to Dismiss Plaintiff's § 1983 claim is due to be DENIED.

### C. MALICIOUS PROSECUTION CLAIMS AGAINST DEFENDANTS WHITEHEAD, WALKER, AND CSITAR

In regards to Plaintiff's final state-law claim of malicious prosecution, Defendants Walker and Csitar raise the defense of absolute immunity under Alabama law. This state's constitution provides, "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. art. I, § 14. Because a county sheriff "is an executive officer of the State of Alabama," *id.* art. V, § 112, he is entitled to this "unwaivable, absolute immunity from suit in any court." *Ex parte Burnell*, 90 So.3d 708, 710 (Ala. 2012) (citations omitted). Absolute immunity extends to "actions against [a sheriff] in [his] individual capacit[y] for acts [he] performed in the line and scope of [his] employment," *Suttles v. Roy*, 75 So.3d 90, 94 (Ala. 2010) (citing *Ex parte Davis*, 930 So.2d 497, 500-01 (Ala. 2005)), because such suits "inherently constitute actions against the State." *Ex parte Shelley*, 53 So.3d 887, 895 (Ala. 2009). A sheriff acts "within the course and scope of [his] employment" when "the actions giving rise to [the] claim were actions taken by [the defendant] in the execution of his duties as sheriff." *Ex parte Hale*, 6 So.3d 452, 457 (Ala. 2008) (internal citations omitted). Such immunity extends to the employees of the sheriff working at county jails. Ala. Code § 14-6-1 (Persons employed to "carry out sheriff's duty to operate the jail and supervise the inmates housed therein" are entitled to immunities afforded sheriff under Alabama Constitution if their acts occurred "within the line and scope of duties and are

acting in compliance with the law.") "[T]he burden of proof in establishing absolute immunity is on the individual asserting it. *Ex parte City of Bessemer*, 142 So. 3d 543, 552 (Ala. 2013) (citation omitted).

The Court thus must inquire whether Defendants Walker and Csitar were acting within the "line and scope of their employment" for the acts and omissions complained of. This task is complicated as neither Defendants Walker and Csitar nor Plaintiff have offered any argument as to whether Defendants were acting within the "line or scope of their employment." As stated above, Plaintiff failed to even respond to these Defendants' Motions to Dismiss; while Walker and Csitar raise the defense of absolute immunity, they omitted the fundamental "line and scope" inquiry in favor of addressing exceptions to absolute immunity *once a defendant has already shown entitlement thereto*. (*See* Doc. 6 at 5-6 (addressing the five exceptions to absolute immunity as collected in *Parker v. Amerson*, 519 So. 2d 442, 443 (Ala. 1987).)

Nonetheless, it appears from the facts of the Complaint that Defendants were acting "in the line and scope of their employment" when they arrested Plaintiff. On January 8, 2016, Defendant Csitar was working in the jail when he spoke with Plaintiff, as jail administrator this is clearly within the scope of his employment. The only other allegations Plaintiff brings against Csitar concern his

supposed "[bringing] another charge for Disorderly Conduct for the discussion which took place in the jail where he refused to allow [Plaintiff] to visit with the inmate." (Doc. 1 ¶ 15.)

In regards to Defendant Walker, Plaintiff alleges that Walker was located in the parking lot behind the sheriff's office when Plaintiff and Walker argued about Plaintiff's ability to enter the jail. Plaintiff also makes allegations that Walker directed the setting of Plaintiff's bail for an amount that exceeded the statutory maximum for the offenses Plaintiff was charged with. Specifically in regards to the Malicious Prosecution claim in the Complaint, Plaintiff's recitation of facts are simple legal conclusions and factual recitations of the elements of a malicious prosecution claim:

> [Plaintiff] alleges that Defendants Whitehead, Walker, and Csitar either initiated charges or directed their subordinates to initiate criminal charges without probable cause and with malice against Plaintiff []. [Plaintiff] alleges that the warrants that were sworn out against him contain deliberate falsity or reckless disregard for the truth. [Plaintiff] alleges that the criminal proceedings that give rise to his present causes of action have all been terminated in his favor, as all charges have been dismissed with prejudice. [Plaintiff] asserts that the Defendants lacked even arguable probable cause for the charges, and that his seizure and prosecution under such circumstances violated his rights under the Fourth and Fourteenth Amendments. [Plaintiff] alleges that he has been injured and damaged as a proximate cause of said malicious prosecution, as previously described in his complaint.

(*Id.* ¶ 32.) Nothing alleged in the Complaint shows that Defendants Walker and Csitar were not acting in the line and scope of their duties; they are thus entitled to absolute immunity.

On the other hand, Defendant Whitehead's arguments for dismissal of Plaintiff's malicious prosecution claim against him are unavailing. Defendant Whitehead's sole paragraph addressing Plaintiff's malicious prosecution claim argues it should be dismissed because there is "no chain of causation" linking Plaintiff's prosecution to him because of the intervening acts of a prosecutor and criminal courts. (Doc. 9-1 at 7.)

In order to state a claim for malicious prosecution under Alabama law, a plaintiff must show:

> 1) that a prior judicial proceeding was instigated by the defendant 2) without probable cause and 3) with malice; 4) that that prior proceeding was terminated in the plaintiff's favor; and 5) that the plaintiff suffered damage[ ] as a result of that prior proceeding.

*Dolgencorp, LLC v. Spence*, 224 So.3d 173, 183 (Ala. 2016) (quoting *Whitlow v. Bruno's, Inc.*, 567 So.2d 1235, 1237 (Ala. 1990)). The elements as recited above do not reflect any sort of "causal" relationship as articulated by Defendant Whitehead. Instead, all that is required is that "a prior judicial proceeding [is] instigated by the defendant," *id.*; such instigation can be by the provision of false information that leads to criminal charges against a plaintiff. For example, in

*National Security Fire & Casualty Co. v. Bowen*, the plaintiff alleged that agents of the defendant-insurance-company had provided false information to a police officer that eventually led to criminal charges against the plaintiff. 447 So.2d 133 (Ala. 1983). The defendant had insured certain construction equipment that was found burned near the plaintiff's logging operation. *Id.* at 136. Suspecting that some person had intentionally burned the construction equipment, the defendant-insurance-company hired self-styled "private investigators" to determine the cause of the fire. *Id.* These private investigators then undertook a campaign to bribe or threaten persons whom they interrogated to induce them to implicate the plaintiff as the arsonist. *Id.* Eventually, the private investigators procured written statements fingering plaintiff from two illiterate acquaintances of plaintiff—one statement by asking the witness to "lie against [the plaintiff]" and the other by giving the witness $100.00 of "hush money." *Id.* at 137.

The plaintiff was then charged with multiple offenses based on the statements procured by the defendant's private investigators; the offenses were eventually nol-prossed by the district attorney. *Id.* After determining that the private investigators were the agents of the defendant, *id.* at 138, *Bowen* found that the defendant could be liable for malicious prosecution by the submission of the false information leading to the formal charges being levelled against the plaintiff.

*Id.* at 139 ("The evidence shows that the criminal charges against [plaintiff] were initiated by [defendant]'s agents. It was they who obtained false information from [the witnesses] that, along with appearances before the grand jury by [a deputy sheriff and one of the private investigators], formed the basis of the indictment of [plaintiff].").

Plaintiff has alleged that Defendant Whitehead "initiated another criminal charge" of harassment against Plaintiff in order to "justify Whitehead's assault and to explain [Plaintiff's] injuries." (Doc. 1 ¶ 21.) Plaintiff appears to be alleging that the charge of harassment was based upon the argument that Plaintiff had with Whitehead concerning Plaintiff's prior representation of clients suing law-enforcement personnel, and that the statements he made could not constitute harassment. Taking the allegations of the Complaint as true and construing all inference in his favor, Plaintiff could state a valid claim for malicious prosecution against Defendant Whitehead for giving allegedly false statements that eventually led to a charge of harassment against Plaintiff. Defendant Whitehead has not sufficiently explained his lack-of-causation argument, and the Court thus denies his Motion to Dismiss the malicious prosecution claim.

### IV. CONCLUSION

For the reasons stated above, Defendants Walker, Csitar, and Moore's Motion to Dismiss (doc. 6) is due to be **GRANTED** in **PART** and **DENIED** in **PART**. All claims against Defendant Moore are due to be **DISMISSED**; all claims again Defendants Walker and Csitar except for Plaintiff's Eighth Amendment Excessive Bail claim are due to be **DISMISSED**. Defendant Whitehead's Motion to Dismiss (Doc. 9-1) is due to be **DENIED**. An Order consistent with this Memorandum will be entered separately.

**DONE** AND **ORDERED** ON JULY 31, 2018.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

190485